**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tyree Yellow Elk, | No. CV-20-00300-TUC-JAS (MSA) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| v. | |
| Barbara Von Blanckensee, | |
| Respondent. | |

Petitioner Tyree Yellow Elk seeks habeas relief under 28 U.S.C. § 2241. (Doc. 1.) He filed this action while incarcerated at the United States Penitentiary in Tucson, Arizona ("USP Tucson"), but he is currently incarcerated at the United States Penitentiary in Terre Haute, Indiana ("USP Terre Haute"). The petition has been fully briefed. (Doc. 15.) For the following reasons, the Court will recommend that the petition be denied in part and dismissed in part for lack of subject-matter jurisdiction.

**I.     Background**

   **A.     Petitioner's Housing Status**

On February 4, 2020, Petitioner was administratively detained in USP Tucson's special housing unit ("SHU") pending an investigation whether he had violated the Federal Bureau of Prison's ("BOP") regulations. (Doc. 15-1 at 18.) He was released from the SHU on September 14, 2020, the day on which he was transferred to USP Terre Haute. (*Id.* at 14.) The record indicates that Petitioner received periodic review of his housing status during his time in the SHU. (*Id.* at 19–21.)

### B. Petitioner's Disciplinary Convictions

The prison disciplinary process begins when an inmate is issued an incident report that describes the infraction the inmate is accused of committing. 28 C.F.R. § 541.5(a). After an incident report is issued, an officer will investigate the incident. *Id.* § 541.5(b). After the investigation, a Unit Discipline Committee ("UDC") will review the incident report. *Id.* § 541.7. If the infraction charged is severe, the UDC will automatically refer the matter to a Discipline Hearing Officer ("DHO"). *Id.* § 541.7(a)(4). The DHO will hold a hearing on the charge, determine whether the inmate committed the infraction, and, if the inmate is found to have committed the infraction, determine what sanctions to impose. *Id.* § 541.8(a), (g). After the DHO determines how to resolve the matter, she must prepare a report explaining the reasons for her decision and for any sanctions imposed. *Id.* § 541.8(h). The inmate is entitled to a copy of the DHO report. *Id.*

In February 2020, Petitioner was charged in an incident report with fighting another person in violation of Prohibited Act Code 201 (IR 3361413). (Doc. 15-2 at 16.) The investigating officer submitted the incident report to the UDC, and, due to the severity of the charge, the UDC referred the matter to a DHO. (*Id.* at 17.) The DHO held a hearing on February 19, 2020. (*Id.* at 12.) The record shows that Petitioner waived his right to appear at the hearing, his right to assistance from a staff representative, and his right to call witnesses, and that Petitioner declined to make a statement or present any documentary evidence. (*Id.* at 13, 17–18, 20–21.) After the hearing, the DHO found that Petitioner had committed the infraction and sanctioned him with disciplinary segregation and the loss of good-conduct time and privileges. (*Id.* at 13–14.) Petitioner received a copy of the DHO's report on March 19, 2020. (*Id.* at 15.)

In April 2020, Petitioner was charged in a separate incident report with threatening bodily harm and assaulting another person, in violation of Prohibited Act Codes 203 and 224 (IR 3387769). (*Id.* at 34.) The charges were referred to the UDC and, based on the severity of the charges, referred further to a DHO. (*Id.* at 35.) The DHO held a hearing on April 22, 2020. (*Id.* at 30.) The record shows that Petitioner waived his right to assistance

1 from a staff representative and his right to call witnesses, and that Petitioner declined to present any documentary evidence. (*Id.* at 31, 38.) It also shows that Petitioner admitted to the assault, although he denied threatening anyone. (*Id.* at 32.) After the hearing, the DHO dismissed the threatening charge but found that Petitioner had committed assault. (*Id.* at 31–32.) The DHO sanctioned Petitioner with disciplinary segregation and the loss of good-conduct time and privileges. (*Id.* at 32.) Petitioner received a copy of the DHO's report on May 19, 2020. (*Id.* at 33.)

### C. Petitioner's Requests for Compassionate Release or Redesignation

In his petition, Petitioner asserts that he submitted written requests to Respondent, asking that the BOP file a motion for compassionate release on his behalf pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), or redesignate him to home confinement pursuant to 18 U.S.C. § 3624(c)(2) and § 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136, 134 Stat. 281, 516 (Mar. 27, 2020). Respondent says that the BOP has no record of these requests. (Doc. 15-1 at 6.)

The docket in Petitioner's underlying criminal case shows that he filed a pro se motion for compassionate release in May 2020, and that the government and the sentencing court overlooked Petitioner's failure to exhaust and addressed his motion on the merits. (Docs. 61, 66, 71, *United States v. Yellow Elk*, No. CR-16-50091 (D.S.D.).) The sentencing court issued a detailed ruling, finding Petitioner had not shown that there are extraordinary and compelling reasons warranting compassionate release, and that the sentencing factors weigh against granting early release. (Doc. 71, *United States v. Yellow Elk*, No. CR-16-50091 (D.S.D.)); *see* 18 U.S.C. § 3582(c)(1)(A)(i) (stating that the sentencing court may reduce a term of imprisonment only for "extraordinary and compelling reasons" and after consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a)).

## II. Discussion

### A. Ground One and Ground Four

"If there is no longer a possibility that [a petitioner] can obtain relief for his claim, that claim is moot and must be dismissed for lack of jurisdiction." *Bishop Paiute Tribe v.*

*Inyo County*, 863 F.3d 1144, 1155 (9th Cir. 2017) (quoting *Foster v. Carson*, 347 F.3d 742, 745 (9th Cir. 2003)). In Ground One, Petitioner alleges that he has been confined in the SHU at USP Tucson since February 4, 2020, without having received a housing review. He requests that Respondent be ordered to release him from the SHU. However, Petitioner was released from the SHU on September 14, 2020, the day on which he was transferred to USP Terre Haute. (Doc. 15-1 at 14.) As such, he has already obtained the relief he seeks, and his claim is moot. *See Munoz v. Rowland*, 104 F.3d 1096, 1097–98 (9th Cir. 1997) (dismissing the petitioner's request to be released from the SHU as moot because he had already been released).

In Ground Four, Petitioner alleges that Respondent has ignored his request for the BOP to file a motion for compassionate release on his behalf. He urges the Court to order Respondent to properly consider his request. However, in May 2020, Petitioner filed a motion for compassionate release in the sentencing court, informing that court that the BOP was ignoring his request. (Doc. 61, *United States v. Yellow Elk*, No. CR-16-50091 (D.S.D.).) The sentencing court overlooked Petitioner's failure to exhaust and issued a detailed ruling, finding that he had not met the requirements for early release. (Doc. 71, *United States v. Yellow Elk*, No. CR-16-50091 (D.S.D.).) Thus, Petitioner has already obtained the relief he seeks, i.e., a ruling by the sentencing court on the merits of his request. His petition for the BOP to make the same request on his behalf is moot.

Petitioner also alleges that Respondent has ignored his request to be redesignated to home confinement pursuant to the BOP's expanded discretion under the CARES Act. For relief, he requests that the BOP be ordered to release him to home confinement. However, federal courts lack "jurisdiction to select the place where [a] sentence will be served. Authority to determine place of confinement resides in the executive branch of government and is delegated to the Bureau of Prisons." *United States v. Ceballos*, 671 F.3d 852, 855 (9th Cir. 2011) (per curiam) (quoting *United States v. Dragna*, 746 F.2d 457, 458 (9th Cir. 1984) (per curiam)). Thus, the Court lacks jurisdiction to grant this relief. *See United States v. Martin*, No. CR-08-00433-001-TUC, 2020 WL 6048328, at *1 (D. Ariz. Oct. 13, 2020)

(stating that courts lack authority to designate defendants to home confinement under the CARES Act); *United States v. Johnson*, No. CR-17-00183-PHX, 2020 WL 4814347, at *1 n.1 (D. Ariz. Aug. 18, 2020) (same).

Finally, Petitioner requests that the BOP be directed to transfer him back to USP Tucson. "When prison officials have legitimate administrative authority, such as the discretion to move inmates from prison to prison or from cell to cell, the Due Process Clause imposes few restrictions on the use of that authority, regardless of any additional motives which are claimed to exist." *Grayson v. Rison*, 945 F.2d 1064, 1067 (9th Cir. 1991). Here, Petitioner has not demonstrated that the transfer from one high-security prison to another high-security prison "subjected [him] to greater restrictions of his liberty" in violation of due process. *Bostic v. Carlson*, 884 F.2d 1267, 1269 (9th Cir. 1989), *overruled on other grounds by Nettles v. Grounds*, 830 F.3d 922 (9th Cir. 2016) (en banc). Thus, the Court lacks jurisdiction to consider this issue. *See id.*

### B.   Ground Two and Ground Three

In Ground Two and Ground Three, Petitioner alleges that he was denied due process during his disciplinary proceedings for IR 3361413 and IR 3387769. Respondent argues that these claims are without merit. The Court agrees with Respondent.

For a prison disciplinary proceeding to satisfy due process, prison officials must (1) provide the inmate with notice of the charge at least 24 hours before the disciplinary hearing, (2) ensure that the inmate "be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals," (3) ensure that the inmate has assistance if he is illiterate or if the matter is complex; (4) ensure that the factfinder is "sufficiently impartial," and (5) ensure that the inmate receives a "written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." *Wolff v. McDonnell*, 418 U.S. 539, 563–71 (1974). Additionally, when disciplinary sanctions include the loss of good-conduct time, due process requires that "the findings of the prison disciplinary board [be] supported by some evidence in the record." *Superintendent v. Hill*, 472 U.S. 445, 454

(1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455–56.

### 1.     IR 3361413 (Fighting)

Petitioner alleges that, at his disciplinary hearing, he requested that the DHO consider the written statement of his cellmate. In response, the DHO allegedly made a hostile statement about the cellmate, suggesting that she was going to convict Petitioner for his association with that person. Petitioner also alleges that the DHO refused to view video footage of the incident or call exculpatory witnesses.

Petitioner's allegations are not supported by the record. The record shows that Petitioner signed forms waiving his right to appear at his disciplinary hearing and his right to call witnesses. (Doc. 15-2 at 20–21.) Thus, Petitioner's allegations about improprieties at his hearing are not credible. Additionally, there is no indication in the record that Petitioner requested review of video evidence. In fact, the record shows that Petitioner declined to present any evidence or make a statement to the investigating officer, the UDC, or the DHO. (*Id.* at 13, 17–18.)

Furthermore, the record shows that Petitioner received due process. The DHO relied on the incident report, in which an officer described witnessing Petitioner and another inmate striking each other with closed fists. (*Id.* at 16.) This constitutes some evidence that Petitioner engaged in fighting. Next, the record indicates that Petitioner received notice of the charge days before the hearing, that Petitioner waived his right to assistance, and that Petitioner received the DHO's report. (*Id.* at 15, 20.) Finally, aside from Petitioner's allegations concerning the DHO's conduct, which are belied by the record, there is no indication that the DHO was biased.

### 2.     IR 3387769 (Assault)

Petitioner alleges that he was presented with an amended incident report on the day of his disciplinary hearing, and thus that he was deprived of adequate notice of the charges.

He also alleges that the DHO refused to view video footage of the incident or call witnesses on his behalf, and that the DHO made a remark indicating that her adverse decision was based in part on Petitioner's association with another inmate.

Again, Petitioner's allegations are not supported by the record. Although there appear to be three different versions of the incident report, the record shows that Petitioner was served at the very latest on April 17, 2020, days before his April 22 hearing.[1] (Doc. 15-2 at 30, 34.) The record also shows that Petitioner signed a form waiving his right to call witnesses. (*Id.* at 38.) Finally, as for Petitioner's allegations concerning the DHO, there is no indication in the record that Petitioner requested review of video evidence, or that the DHO's decision was based on anything besides the evidence. In fact, the DHO dismissed the threatening charge as not supported by the evidence. (*Id.* at 32.)

Furthermore, the record indicates that Petitioner received due process. The DHO relied on the investigating officer's description of the video, which reportedly showed Petitioner slapping another inmate, as well as Petitioner's admission that he assaulted the other inmate. (*Id.* at 31–32.) This constitutes some evidence that Petitioner committed an assault. Next, the record shows that Petitioner waived his right to assistance, that he chose to not present documentary evidence, and that he received the DHO's report. (*Id.* at 31, 33, 38.) Finally, as described above, the record indicates that the DHO's decision was based on the evidence, not improper bias.

Accordingly,

**IT IS RECOMMENDED**, as to the petition for a writ of habeas corpus under 28 U.S.C. § 2241 (Doc. 1), that Ground Two and Ground Three be **denied** and that Ground One and Ground Four be **dismissed for lack of subject-matter jurisdiction**.[2]

---

[1] The copy submitted by Respondent contains a single paragraph describing the incident, and it was served on Petitioner on April 17, 2020. (Doc. 15-2 at 34.) Petitioner submits two versions of the incident report, one of which contains the same one-paragraph description while the other contains a lengthier description. (Doc. 1 at 10–11.) Both versions submitted by Petitioner were served on April 10, 2020. (*Id.*)

[2] Respondent argues that Petitioner's claims should be dismissed for failure to exhaust. Petitioner contends that he could not exhaust his claims because the BOP refused to provide him with the necessary forms. Given the Court's findings in this case, this dispute need not be addressed.

1   This recommendation is not immediately appealable to the United States Court of
2 Appeals for the Ninth Circuit. The parties shall have fourteen days from the date of service
3 of this recommendation to file specific written objections with the district court. The parties
4 shall have fourteen days to file responses to any objections. 28 U.S.C. § 636(b)(1); Fed. R.
5 Civ. P. 72(b)(2). No replies may be filed absent prior authorization by the district court.
6 Failure to file timely objections may result in the acceptance of this recommendation by
7 the district court without de novo review. *United States v. Reyna-Tapia*, 328 F.3d 1114,
8 1121 (9th Cir. 2003) (en banc).

9   The Clerk of Court is directed to **terminate** the referral of this matter. Filed
10 objections should bear the following case number: **CV-20-00300-TUC-JAS**.

11   Dated this 20th day of May, 2021.

_____
Honorable Maria S. Aguilera
United States Magistrate Judge